IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT POLICARO,　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　Plaintiff,　　　　　　 )　Civil Action No. 09-1039
　　　　　　　　　　　　　　　　)
　v.　　　　　　　　　　　　　　 )　Judge Ambrose
　　　　　　　　　　　　　　　　)　Magistrate Judge Bissoon
EATON CORPORATION,　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　Defendant.　　　　　　 )

# MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I.　RECOMMENDATION

It is respectfully recommended that Defendant's Motion for Summary Judgment (Doc. 22) be denied, that Plaintiff's Motion for Summary Judgment (Doc. 24) be granted, and that the parties be ordered to appear before the undersigned to discuss the judgment amount to be entered in favor of Plaintiff.

## II.　REPORT

Plaintiff has filed this ERISA action against his employer, Eaton Corporation, seeking payment of benefits under its short term disability plan ("the Plan"). *See generally* Compl. (attached to Doc. 1). Plaintiff was granted short term disability ("STD") benefits effective April 1, 2008, and he received them through August 7, 2008, at which time they were terminated by Defendant. *See* Def.'s Facts (Doc. 23) at ¶¶ 2-3.[1]

---

[1] The Plan administrator is Eaton Corporation Health and Welfare Administrative Committee, and the Claims Administrator is Sedgwick CMS. *Id.* at ¶ 8. The distinction between these entities is immaterial for the purposes of the analyses herein, so the Court will refer to their actions, collectively, as that of Defendant.

Defendant's initial determination of disability was based on Plaintiff's cervical pain and psychiatric problems. *Id.* at ¶ 9. Although the parties' filings address both types of impairment, the Court need not discuss Plaintiff's cervical issues because Defendant's handling of his mental conditions is dispositive. *See generally* discussions *infra*.

Defendant asserts that, although Plaintiff's treating psychiatric sources "provided [objective] evidence [of disability] at the outset of Plaintiff's claim," such evidence was lacking by August, 2008. *See* Def.'s Opp'n Br. (Doc. 27) at 2; *cf. also id.* at 13 (given reports of treating psychiatrists, "[Defendant] does not dispute that Plaintiff was disabled in April and May[,] 2008"). In arguing against continued disability, Defendant relies on the reports of three non-examining consultative physicians, each of whom identified a purported lack of objective medical evidence supporting the opinions of Plaintiff's treating psychiatrists. *See* Admin. Rcd. (filed under Doc. 23-1 through 23-8, hereinafter, "R. at __") at 185 (Rpt. of Dr. Vogel, stating that "[t]here [was] insufficient objective evidence of cognitive dysfunction"); *id.* at 159 (Rpt. of Dr. Polsky, rejecting findings of Plaintiff's treating psychiatrist as "[un]substantiated" by "objective mental status examination findings"); *and id.* at 126-27 (Rpt. of unnamed medical reviewer, concluding same).

Defendant is correct that, under the Plan, "[o]bjective findings" were required to establish continued disability. *See* Def.'s Facts at ¶ 7. The Plan's definition of "objective findings," however, is instructive:

> Objective findings are those your physician observes through objective means, not your description of the symptoms. Objective findings include:
>
> • Physical examination findings (functional impairments/capacity);
>
> • Diagnostic test results/imaging studies;

- Diagnoses;

- X-ray results;

- Observation of anatomical, physiological or psychological abnormalities; and

- Medications and/or treatment plan[s].

*Id.* (quoting Plan).

For the purposes of mental impairments, all of Plaintiff's medical reports came from the same group of treating physicians, at Beaver County Psychiatric Services ("BCPS"). On April 10, 2008, BCPS psychiatrist Dr. Joseph Peters authored a two-page report that, among other things, recited the history of Plaintiff's illnesses and observed that he was "highly anxious," "displayed mild stuttering," had "mildly impaired" cognitive and memory functions, and possessed "limited" insight. *See* R. at 236-37. Based on these and other findings, Dr. Peters diagnosed Plaintiff with "[a] Major Depressive Episode" and "Panic Disorder with Agoraphobia," and he opined that Plaintiff's conditions resulted in "severe . . . occupational problems." *Id.* at 237.

On summary judgment, Defendant concedes that this and other evidence was sufficient to establish Plaintiff's disability in April and May, 2008. *See* discussion *supra*; *see also* Def.'s Opp'n Br. at 5 (characterizing Dr. Peters's April 10th report as reflecting "a comprehensive examination" supporting determination of disability). Defendant's stated objection, however, has been Plaintiff's failure to supply further evidence of continuing disability. *See, e.g.*, Def.'s Br. (filed under Doc. 22) at 5-6 (citing provisions of Plan requiring evidence of continued disability).

The record is to the contrary. After Dr. Peters's April 10th report, Plaintiff's treating psychiatrists provided multiple, consistent findings and opinions of disability. *See, e.g.*, Rpt. of Dr. Peters dated May 5, 2008 (R. at 222) ("[Plaintiff was] essentially housebound [due] to his psychological status," he "[had] been started on a psychopharma[co]logical treatment regime," and "[i]t [was] not possible . . . to make a definitive estimate as to when he may be able to return to work"); Rpt. of Dr. Peters and Dr. Suzanne Vogel-Scibilia dated Aug. 21, 2008 (Plaintiff "has been followed for the treatment of a Major Depressive Disorder and a Panic Disorder with Agoraphobia," and, although "minimal gains" had been made, "his functional patterns continue[d] to be severely constricted and marked by significantly depressed mood, strong fear/anxiety, ruminations, feelings of helplessness and hopelessness, impaired concentration and attention, agitation and restlessness, and ongoing minimal activity and socialization levels"; "[Plaintiff did] not now nor in the immediate future appear capable of performing reliably the duties of his job"); Rpt. of Dr. Peters dated Oct. 22, 2008 (R. at 173) (Plaintiff's "mental status and functional patterns [were] essentially [unchanged]," and "[h]e still [did] not present as capable of performing reliably the duties of his job"); Rpt. of Drs. Peters and Vogel-Scibilia dated Nov. 19, 2008 (R. at 136) (same); Rpt. of Dr. Vogel-Scibilia dated Jan. 9, 2009 (R. at 133-34) (discussed in detail, *infra*); *and* Rpt. of Dr. Vogel-Scibilia dated Mar. 20, 2009 (R. at 131) (reaffirming opinion of disability, and stating: "[Plaintiff] has decreased short term memory, decreased concentration[,] problems initiating tasks," and "panic symptoms that [were] disabling and prevent[ed] him from working").

This evidence notwithstanding, Defendant persists in relying on the reports of three non-examining physicians, each of whom found that Plaintiff, and his treating physicians, supplied insufficient objective evidence of disability. *See* discussion *supra*.

4

The problem with Defendant's reliance on those physicians, however, was their failure: (a) to consider the meaning of "objective" evidence, <u>as defined under the Plan</u>; and (b) to provide Plaintiff any guidance regarding precisely what, in the physicians' views, constituted sufficient "objective evidence."

As seen above, "objective findings" under the Plan included "[d]iagnoses," "[o]bservation[s] of . . . psychological abnormalities," and "[m]edications and/or treatment plan[s]." *See* discussion *supra*. The ongoing reports of Plaintiff's treating psychiatrists were replete with "objective findings," as so defined. *See* discussions *supra* (offering consistent diagnoses of major depressive disorder and panic disorder with agoraphobia; observing psychological abnormalities, including "high[] anxi[ety]," mild stuttering, impaired cognitive and memory functions, limited insight, significantly depressed mood, strong fear, ruminations, feelings of helplessness and hopelessness, impaired concentration and attention, agitation and restlessness, decreased short term memory, decreased concentration, problems initiating tasks, and disabling panic symptoms; and outlining psychopharmacological and other treatment regimens).

To the extent that these objective findings were deemed insufficient, neither Defendant nor its non-examining physicians offered specific explanations as to what, in their minds, would satisfy the "objectivity" requirement. Indeed, Plaintiff's treating physician Dr. Vogel-Scibilia expressed frustration regarding the elusiveness of Defendant's demands:

> [M]y teleconference . . . on December 8, 2008 . . . does not in my reading adequately reflect the conversation that I had with [one of Defendant's non-treating] psychiatric specialist[s]. I would like to put on the record very clearly in writing that I very clearly told the [non-treating psychiatrist] that [Plaintiff] suffers from significant depressive and anxiety symptoms, has chronic pain as well as trouble with short term memory and attention such that he was completely unable to work. I also stated that[,] as documented in

5

>     my [treatment notes], he cannot concentrate, has decreased
>     attention, and decreased short term memory. All of his symptoms
>     are very clearly documented in the paper work here at [BCPS].

R. at 133-34; *see also id.* (concluding, after recitation of various treatment notes in support of her opinions, that "it would be psychiatrically unwise to have [Plaintiff] in any type of industrial situation given the significance of his depressive and anxiety symptoms," and his working would be "dangerous and unwise both for the safety of the plant as well as for the patient").

Defendant's decision to terminate Plaintiff's STD benefits is reviewed under an "abuse of discretion" standard. Estate of Schwing v. The Lilly Health Plan, 562 F.3d 522, 525-26 (3d Cir. 2009).[2] Defendant has failed the applicable standards in many respects.

First was Defendant's rejection of the opinions of Plaintiff's treating physicians, in favor of medical sources who were limited to a "paper review." Although treating physicians are not entitled to special deference under ERISA, courts have "frequently expressed concern where, as here, the administrator denies a claim [in] reliance on the reports of paper-review consultants, in opposition to the treating and examining physicians' consistent and concurring opinions that the claimant is disabled." Schwarzwaelder, 606 F. Supp.2d at 559 (collecting cases). Administrators may not arbitrarily refuse to credit the reliable opinions of treating physicians, *id.*, and Defendant acted arbitrarily in rejecting the findings of Drs. Peters and Vogel-Scibilia

---

[2] The "sliding scale" standard of review, previously followed in this Circuit, has been abandoned in light of recent Supreme Court authority. *See* Schwing, 562 F.3d at 545 (citations omitted). Thus, concerns regarding "structural conflicts of interest and/or procedural anomalies" in the decision-making process no longer modify the standard of review, but rather are viewed as additional factors in evaluating whether the administrator has abused its discretion. Schwarzwaelder v. Merrill Lynch & Co., Inc., 606 F. Supp.2d 546, 557-58 (W.D. Pa. 2009) (McVerry, J.) (citations omitted). Although certain of the Court's analyses below may be viewed as reflecting procedural abnormalities, *cf. id.* at n.38, the undersigned sees little benefit to parsing them out and so labeling them. It suffices to say that, under the circumstances presented, Defendant's termination of Plaintiff's benefits constituted an abuse of discretion.

for lack of objectivity, given that their conclusions were supported by "objective findings" as defined under the Plan. *See* discussions *supra*; *cf. also* Schwarzwaelder, 606 F. Supp.2d at 560 n.45 ("[u]nlike cardiologists or orthopedi[st]s, who can formulate medical opinions based upon objective findings derived from objective clinical tests, the psychiatrist typically treats his patient's subjective symptoms"; and "[w]hen a psychiatrist evaluates a patient's mental condition, a lot . . . depends on interviewing the patient and spending time with [him]") (citation to quoted source omitted).[3]

"In addition, a decision to forego an IME [independent medical examination] and conduct only a paper review, while not rendering a denial of benefits arbitrary *per se*, is another factor to consider in the Court's overall assessment of the reasonableness of the administrator's decision-making process." Schwarzwaelder, 606 F. Supp.2d at 559. No IME was conducted in this case, and this omission further undermines Defendant's decision to terminate benefits. *See id.* at 560 & n.45 ("[c]ourts have noted the particular appropriateness and helpfulness of an IME where the disability claim encompasses significant inherently subjective complaints," as do psychological impairments) (citations omitted).

Another serious deficiency flows from Defendant's current admission that the BCPS reports in April and May, 2008 constituted acceptable evidence of disability, while at the same time insisting that that same treatment group's later reports and opinions lacked the support of "objective evidence." Dr. Peters's April 10th report identified few, if any, more "objective

---

[3] Defendant may argue that Schwarzwaelder is distinguishable, because the plan in that case did not expressly exclude "subjective" evidence of disability. *Compare id.* at 561-63 *with* discussion *supra* (Plan here required showing of disability through "objective means, not [a claimant's] description of the symptoms"). Given that Plaintiff's treating physician opinions were supported by "objective findings," as defined in the Plan, any presumed distinction between Schwarzwaelder and this case is unavailing.

7

findings" than did his or Dr. Vogel-Scibilia's subsequent reports, and Defendant acted arbitrarily in failing to appreciate or accept the cumulative nature of Plaintiff's treatment reports.[4]

Relatedly, Defendant's termination of benefits "in the absence of a significant change in the information available to it . . . weigh[s] against the propriety of [the] decision to discontinue [benefits]." Dillard's Inc. v. Liberty Life Assur. Co. of Boston, 456 F.3d 894, 900 (8th Cir. 2006) (citation to quoted source omitted); *accord* Miller v. American Airlines, Inc., 2009 WL 6039583, *12 (M.D. Pa. Nov. 30, 2009) (absent new information, "abrupt reversals of benefits determinations may constitute significant procedural irregularity that may support finding an administrator's benefits determination to be arbitrary and capricious") (citations omitted). While Defense counsel undoubtedly would highlight that the reports of the non-examining physicians post-dated Defendant's initial grant of disability benefits, those reports merely asserted that medical findings and opinions of disability, already accepted by Defendant (as now reaffirmed on summary judgment), did not reflect "objective evidence," notwithstanding the Plan's definitions to the contrary. In sum, Defendant's reliance on the non-examining physicians' opinions cannot withstand judicial scrutiny. *See* discussions *supra*; *see also, e.g.*, Hession v. Prudential Ins. Co. of Amer., 2008 WL 5207089, *4 (3d Cir. Dec. 15, 2008) (where insurer terminated benefits in "heavy reliance on a paper review," despite findings of disability by "nearly all of the [claimant's] treating physicians," procedural irregularity was evident and

---

[4] Many of Plaintiff's treating physician reports made reference to the physicians' prior reports, essentially chronicling the status of Plaintiff's condition over time. Had the physicians attached the Defendant-approved April 10th report to each subsequent report, or had the April 10th report been specifically incorporated by reference, it is hard to see how Defendant's complaints regarding the supposed absence of "objective findings" could prevail. Along the same lines, the treating physicians' failure to attach the April 10th report to each subsequent report hardly establishes that Plaintiff did not provide objective evidence of continuing disability.

8

decision was reviewed, and ultimately rejected, under heightened scrutiny standard) (citation to published authority omitted).[5]

Finally, the Court finds it very troubling that Defendant failed to advise Plaintiff, or his treating physicians, regarding what additional "objective" medical evidence was necessary. *See* discussion *supra* (quoting letter of Dr. Vogel-Scibilia, who expressed frustration regarding non-examining physician's characterization of her reports and purported lack of objective evidence supporting her opinions). This failure to allow Plaintiff to remedy any perceived or asserted shortcomings in his physicians' reports arguably also is arbitrary and capricious. *See* Skretvedt v. E.I. DuPont de Nemours & Co., 268 F.3d 167, 178 n.8 (3d Cir. 2001) (Third Circuit Court was "trouble[ed]" by defendant's "fail[ure] to provide an explanation of what would constitute sufficient 'objective' medical evidence of a psychological disability," but Court declined to reach issue because defendant's decision was arbitrary and capricious on other grounds) (citations omitted).

---

[5] Although Defendant flirts with the notion that Plaintiff's benefits were terminated because his psychiatric condition improved, *see* Def.'s Opp'n Br. at 8 & n.3, this is not borne out by the medical evidence and is inconsistent with the explanation provided to Plaintiff regarding the termination of his benefits. *See* non-examining physician reports (each finding non-disability based on lack of objective medical evidence); *see id.*, R. at 160 (noting treating physician's observation that Plaintiff "ha[d] made minimal clinical gains"); *compare also* R. at 71 (termination of benefits ltr. dated Aug. 14, 2008, stating that "there [was] no objective medical information to support [Plaintiff's] inability to work") *with* Doyle v. Nationwide Ins. Cos., 240 F. Supp.2d 328, 347 (E.D. Pa. 2003) ("permitting an administrator's post hoc rationale to prevail when a claimant seeks review in federal court would undercut ERISA's requirement that administrators provide specific reasons from the outset when denying a claim for benefits") (citations and internal quotations omitted). Equally unfounded is Defendant's suggestion that Plaintiff's benefits were terminated because he failed to submit the results of a comprehensive psychiatric evaluation presumably conducted in May, 2008. *Compare* Def.'s Opp'n Br. at 8 *with* discussion immediately *supra*.

For all of the reasons stated above, Defendant's termination of Plaintiff's STD benefits constituted an abuse of discretion, and summary judgment should be entered in favor of Plaintiff. Plaintiff's request for attorneys' fees, however, should be denied. In this regard, the Court considers:

> (a) the offending parties' culpability or bad faith;
>
> (b) the ability of the offending parties to satisfy the award of attorneys' fees;
>
> (c) the deterrent effect of an award of attorneys' fees against the offending parties;
>
> (d) the benefit conferred upon members of the plan as a whole; and
>
> (e) the relative merits of the parties' positions.

In re Unisys Corp. Retiree Med. Benefits ERISA Litig., 579 F.3d 220, 239 (3d Cir. 2009) (citation to quoted source omitted), *cert. denied*, -- U.S. --, 130 S. Ct. 1546 (2010).

As to factor (a), the undersigned, having sat by referral in this case from its inception, sees little basis for finding culpability or bad faith on the part of Defendant. To the contrary, Defendant has consistently expressed its belief that the defense of this lawsuit was consistent with, and required by, its fiduciary duties to protect the funds of the Plan and the interests of other potential disability claimants. *See id.*; *see also* factor (d) (considering "members of the plan as a whole").

Furthermore, Defendant secured the opinions of six consultative, albeit non-examining, medical professionals before determining that Plaintiff's benefits should be terminated. *See* Def.'s Br. at 14 (accounting for Plaintiff's mental and physical impairments). Although the Court ultimately disagrees with the definitions of "objectivity" relied upon by Defendant and its

10

psychiatric reviewers, Defendant's evaluation of Plaintiff's claim file, on the whole, does not evince a party in need of future deterrence. *See* factor (c), *supra*.

The final factor,[6] the relative merits of the parties' legal positions, does not counsel in favor of assessing fees. Although the undersigned would not necessarily characterize this as a "close case," it is fair to say that Defendant possessed colorable legal defenses. Only with the benefit of hindsight, and after careful judicial review, has it become clear that Defendant abused its discretion in evaluating Plaintiff's mental conditions. For all of these reasons, Plaintiff's request for attorney's fees should be denied.

The only outstanding issue is determining the monetary amount of the judgment to be entered against Defendant. The Court cannot make this determination on the current record, and the parties should be afforded an opportunity to reach agreement on an amount, or to submit counter-proposals.

If the instant Report and Recommendation is adopted, the District Court should direct the parties to appear before the undersigned to facilitate a resolution of the appropriate judgment amount. At the same time, the parties may consider whether pre-judgment settlement negotiations are desirable given the costs associated with a potential appeal.

Consistent with the foregoing, Defendant's Motion for Summary Judgment (Doc. 22) should be denied, Plaintiff's Motion for Summary Judgment (Doc. 24) should be granted, and that the parties should be directed to appear before the undersigned as contemplated above.

---

[6] There is no evidence in the record regarding Defendant's ability to satisfy a fees award. *See* factor (b).

In accordance with the Magistrates Act, 20 U.S.C. § 636(b)(1) (B) and (C), and Rule 72.D.2 of the Local Rules for Magistrates, objections to this Report and Recommendation are due by July 9, 2010. Responses to objections are due by July 23, 2010.

June 25, 2010                                     s\Cathy Bissoon
                                                  Cathy Bissoon
                                                  United States Magistrate Judge

cc (via email):

All Counsel of Record